# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEN HANSTED,<br><br>   Plaintiff,<br><br>  v.<br><br>GINA La Morte, OINABIZ MEDIA, LLC,<br><br>   Defendants,<br><br>  and<br><br>GINA LA MORTE, LLC,<br><br>   Nominal Defendant. | **COMPLAINT**<br><br>Index No.<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ken Hansted, by and through his attorneys, M. Ross & Associates, LLC, as and for his Complaint against Gina La Morte, directly, and derivatively against Gina La Morte, LLC, alleges as follows:

## NATURE OF THE ACTION

1. This action is brought by the Plaintiff, Ken Hansted ("Hansted" or "Plaintiff") to recover an investment which was improperly squandered by the Defendant, Gina La Morte ("La Morte" or "Defendant"), his business partner in their venture to sell a line of women's handbags.

## THE PARTIES

2. Hansted, an individual, is a resident of the state of Florida. He is a successful businessman and investor and owns stakes in various entities.

3. La Morte, an individual, is a self-described Celebrity Fashion Stylist, and upon information and belief, a resident of the State of New Jersey.

4. Oinabiz Media, LLC, is a New Jersey limited liability company which has its principal place of business in New Jersey. Upon information and belief, Oinabiz Media, LLC is owned and/or controlled by La Morte.

5. Gina La Morte, LLC, is a Delaware Corporation which has its principal place of business in New Jersey.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the within dispute pursuant to 28 U.S.C. § 1332(a)(1) as it is between citizens of different states and the amount in controversy exceeds $75,000.00.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3) in that La Morte is subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

8. In or around October of 2016, La Morte and Hansted began discussing the concept of selling a line of women's handbags and donating a percentage of the profits to not-for profits working against human trafficking.

9. La Morte expressed to Hansted a need for capital and he decided to move forward and make an initial investment of twenty thousand dollars ($20,000.00) pursuant to a promissory note. The promissor on said note was Oinabiz Media, LLC.

10. Following that initial investment, Hansted immersed himself in the business and started pro-forma business modeling.

11. Hansted and La Morte decided to create a new brand for their venture, distinct from La Morte's previously existing business and therefore formed Gina La Morte, LLC on or about May 19, 2017, and subsequently changed the name to Trade by Gina La Morte (the "Company").

12. It was agreed between Hansted and La Morte that Hansted would own forty percent of the new entity, and that La Morte would own sixty percent.

13. Additionally, it was agreed that La Morte would run the Company, and execute all manufacturing, operations and marketing.  Hansted would finance the company up to an initial commitment of $250,000.00 and consult on all aspects of the Company on an as needed basis.

14. In connection with their venture, Hansted and La Morte leased a storefront in Montclair, New Jersey, and each of them co-signed the lease.

15. Hansted spent approximately 100 hours developing a business model which contained metrics that would guide his investing.

16. During the first several months of their venture, Hansted and La Morte maintained daily contact.

17. Subsequently however, La Morte has mismanaged the Company, squandering Hansted's investment.

18. Among other instances of mismanagement, Hansted arranged a deal through a personal contact of his for the handbags to be featured in a Fall runway show, which was expected to generation approximately ten million online impressions.  Given this opportunity for exposure, it was expected that the handbag styles that the Company had on hand at the time would be featured in the runway show.

19. Instead, Hansted became aware that La Morte had spent a considerable amount of time and money to create prototypes for a new line that would not be available for purchase at the

time of the show, but these were the handbags featured in the runway show.  Thus, the runway show and attendant exposure resulted in no sales of merchandise that the Company had on hand.

20. As of November of 2017, the Company had only sold thirty items.

21. Hansted came to learn that La Morte had given him inaccurate numbers regarding gross profit margins, which he relied upon in deciding to finance the Company.

22. Eventually, amidst these dismal sales, Hansted asked La Morte about her plans for moving the business forward.  Despite numerous requests, La Morte failed to address the situation, and in particular the lack of sales.

23. Throughout this period (October through mid-November of 2018) Hansted continued to pay bills on behalf of the Company.

24. La Morte continued to request additional funds from Hansted and when Hansted refused to make additional investments, La Morte suggested she had other investors who wanted to invest in the business.  Hansted welcomed this news and requested that La Morte set up meetings with these potential investors, but she did not.

25. To date, Hansted has made either capital contributions or loans to the Company and/or to La Morte personally, or to a different company controlled by La Morte of $156,200.00, but has not been paid back or received any distributions.

26. Likewise, La Morte has refused to offer a plan to increase sales so as to pay back Hansted and pave the way for his exit from the Company.

27. La Morte's mismanagement of the Company has damaged Hansted, both individually, and in his capacity as a member of a limited liability company.

28. In connection with his investment, and consistent with his rights as a member of the LLC, Hansted has demanded production of the Company's books and records by letter dated June 18, 2019, and again by letter dated July 10, 2019.

29. Despite these demands, in breach of her duties as a member of the Company, La Morte has not made such books and records available.

30. Upon information and belief, La Morte has diverted funds belonging to the Company, and originating with Hansted, to other persons and/or entities that she controls.  However, without a response to his demand for books and records, Hansted is unable to determine if this is the case.

31. A demand for derivative action in this case would be futile as La Morte is the only other member, and her response to the demand for books and records is indicative to her overall approach to this dispute.  Moreover, it is unreasonable to expect that she take action against herself for having harmed the Company.

## FIRST COUNT
## BREACH OF FIDUCIARY DUTY
## (Direct Claim Against La Morte)

32. Plaintiff repeats and realleges his previous allegations as if fully set forth herein.

33. La Morte is a managing member of the Company.

34. As a managing member, she owes fiduciary duties to fellow members of the Company, including Hansted.

35. By mismanaging the Company, refusing to cooperate in furnishing a plan for moving the Company forward, diverting Company funds, and refusing to produce the Company's books and records pursuant to Hansted's demands, La Morte has breached the fiduciary duty owed to Hansted.

36. By virtue of said breach, Hansted has been damaged in an amount to be proven at trial, but which presently exceeds $156,000.00.

## SECOND COUNT
## BREACH OF FIDUCIARY DUTY
## (Derivative Claim Against La Morte)

37. Plaintiff repeats and realleges his previous allegations as if fully set forth herein.

38. La Morte is a managing member of the Company.

39. As a managing member, she owes fiduciary duties to the Company.

40. By mismanaging the Company, refusing to cooperate with Hansted in devising a plan for moving the Company forward, diverting Company funds, and squandering the Company's business opportunities, she has breached her duty owed to the Company, thereby injuring its members.

41. By virtue of said breach, Hansted has been damaged in his capacity as a member, in an amount to be proven at trial, but which presently exceeds $156,000.00.

## THIRD COUNT
## CONVERSION
## (Derivative Claim Against La Morte)

42. Plaintiff repeats and realleges his previous allegations as if fully set forth herein.

43. Hansted made capital contributions to the Company.

44. The funds that Hansted contributed to the Company belonged solely to the Company and were possessed by the Company.

45. Upon information and belief, a portion of Hansted's capital contributions to the Company were diverted to other persons and or entities, by La Morte.

46. By diverting said capital contributions, La Morte converted property belonging to the Company.

47. By virtue of said conversion, Hansted has been damaged in his capacity as a member in an amount to be proven at trial, but presently believed to exceed $156,000.00.

## FOURTH COUNT
## ACCOUNTING/BOOKS AND RECORDS
## (Direct Claim Against La Morte and the Company)

48. Plaintiff repeats and realleges his previous allegations as if fully set forth herein.

49. As a member of the Company, Section 18-305 of the Delaware Limited Liability Company Act, Hansted has the right to inspect the books and records of the Company.

50. Nevertheless, La Morte has not permitted such inspection or furnished true and full information about the Company.

51. Accordingly, La Morte should be compelled to furnish such information sufficient to determine, among other things, how Hansted's capital contributions were used.

WHEREFORE, Plaintiff demands judgment awarding damages in an amount to be proven at trial, but presently believed to exceed $156,00.00, and such other and further relief as the Court may deem just and proper, including costs and attorneys' fees

## JURY DEMAND

Plaintiff demands trial by jury.

                                              M. ROSS & ASSOCIATES, LLC

                                              By:  s/Daniel Branower____
                                                    Daniel Branower, Esq. (DB9105)
                                                    M. Ross & Associates, LLC
                                                    440 Sylvan Avenue, Suite 220
                                                    Englewood Cliffs, New Jersey 07632
                                                    Phone:  201-568-2064
                                                    Email:  dbranower@mrossllc.com
                                                    *Attorneys for Plaintiff Ken Hansted*